### George HERTZKE, et al.

### v.

### John RILEY, et al.

### Civ. A. No. 88–0939.

United States District Court, E.D. Pennsylvania.

May 8, 1989.

---

**118**

Richard J. Orloski, Orloski & Hinga, Allentown, Pa., for plaintiffs.

Denise A. Kuhn, Philadelphia, Pa., for defendant Ralph Marinetti.

Edward T. Gillis and Cynthia J. Giles, Asst. U.S. Attys., E.D.Pa., Philadelphia, Pa., for defendants John Riley, John Doherty, Donn Jerre Miller, Robert Lumsden, John Morgan and U.S. Drug Enforcement Agency.

## MEMORANDUM AND ORDER

DuBOIS, District Judge.

Presently before me is the Motion of the defendants, John Riley, John Doher-ty, Donn Jerre Miller, Robert Lumsden, John Morgan and the United States Drug Enforcement Administration (hereinafter the "Federal Defendants"), to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and the Motion of the defendant, Ralph Marinetti (hereinafter sometimes referred to as the "State Defendant"), for Summary Judgment pursuant to Fed.R.Civ.P. 56. Because the Court has been presented with evidence outside the pleadings which I have not excluded, the Federal Defendants' Motion to Dismiss shall be treated as a motion for summary judgment pursuant to Fed.R.Civ.P. 56. *See Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1343 and 1346.

In this suit plaintiffs allege that the actions of the defendants in obtaining the cooperation of plaintiff, Sharon Hertzke, in an investigation of illegal drug related activities and the placement of the three plaintiffs in the Federal Witness Protection Program ("FWPP") resulted in a deprivation of plaintiffs' constitutional right to liberty under the Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The defendants' Motions will be granted and judgment will be entered in favor of the defendants and against the plaintiffs on the ground that plaintiffs have failed to allege a constitutional violation.

For the purposes of these Motions, "[t]he evidence of the non-movant[s] [is] to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). With that directive in mind, the facts of this case may be summarized as follows:

In late 1982, plaintiff Sharon Hertzke contacted the Whitehall Township police with information concerning illegal drug related activities. Ms. Hertzke learned of this information through her sister, who, at various times, resided with Ms. Hertzke,

her husband and her son. There is no evidence that Ms. Hertzke had any criminal record or that she had engaged in any criminal enterprise.

The Whitehall Township police referred the case to the Pennsylvania State Police Strike Force. In January of 1983, Trooper James McAndrew of the Strike Force interviewed Ms. Hertzke. In early February of 1983, Ms. Hertzke met with Trooper McAndrew's superior, defendant Corporal Ralph Marinetti. Corporal Marinetti asked Ms. Hertzke to become a confidential informant and to participate in the investigation by making a "chemical drop"—delivering a chemical used to manufacture an illegal drug. On February 4, 1983, Ms. Hertzke signed papers consenting to a body wiring. While Ms. Hertzke was in contact with the Strike Force, various officers spoke to her about meeting with people from the United States Drug Enforcement Agency ("DEA") and told her that people from the DEA would "take care of her."

A few days prior to February 17, 1983, Ms. Hertzke met with Pennsylvania State Police Strike Force Officers McAndrew and Marchetti to discuss the FWPP. On February 17, 1983, Ms. Hertzke and her husband, plaintiff George Hertzke, met with defendants, John Doherty, an Assistant U.S. Attorney, and DEA Agents Donn Jerre Miller, Robert Lumsden, and John Morgan, and Officer Marinetti. Officers McAndrew and Marchetti were also in attendance. At this meeting Agents Lumsden and Morgan explained the FWPP to plaintiffs Sharon and George Hertzke. Agents Lumsden and Morgan also promised the plaintiffs that rather than entering the FWPP, the plaintiffs could be relocated anywhere they wanted and given a lump sum of money. The amount of money was never disclosed to the plaintiffs.

Shortly before the arrests of the subjects of the investigation were made on April 18, 1983, Agent Lumsden informed Ms. Hertzke that no money was left for the lump sum option. In May of 1983, Ms. Hertzke again discussed the FWPP, and she and her family agreed to participate in the program. Thereafter, the plaintiffs were placed in a safe house in the Poconos for two months until they entered the pro-

gram on June 29, 1983. The plaintiffs have remained in the FWPP since that time.

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies] [are] entitled to judgment as a matter of law." Summary judgment is mandatory when "a party ... fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Plaintiffs contend that the broken promise by the DEA agents—to give the Hertzkes a lump sum of money and relocate them anywhere—has placed their lives in danger and has forced them to participate in the FWPP which has deprived them of their constitutional right to liberty as stated in the Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs seek to impose liability for deprivation of their constitutional rights and conspiracy to deprive them of their constitutional rights against the State Defendant under 42 U.S.C. §§ 1983 and 1985(3) and against the Federal Defendants under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

To state a cause of action under 42 U.S.C. § 1983, the plaintiffs must allege that the defendants have violated some right "secured by the Constitution and laws." *See Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Similarly, the plaintiffs must allege the violation of a constitutional right to sustain a *Bivens* action. *Rodriguez v. Ritchey,* 556 F.2d 1185, 1190 (5th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978); *McNally v. Pulitzer Pub. Co.,* 532 F.2d 69, 76 (8th Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976). Thus, the threshold issue is whether the restraints imposed by the FWPP encroach on the liberty rights secured by the constitution. I find that they do not.

The FWPP was established as part of the Organized Crime Control Act of 1970 and is codified at 18 U.S.C. § 3521. The purposes of the program are "to guarantee the safety of government witnesses who agree to testify against alleged participants in organized criminal activity and thereby create an incentive for persons involved in such activities to become informants." *Franz v. United States*, 707 F.2d 582, 586 (D.C.Cir. 1983). Generally, persons inducted into the program are relocated and provided with new identities, the documents to support these new identities, as well as housing, employment, medical services and other social services. *See id.*

It is uncontested that participation in the program is voluntary. Although participants in the program must abide by certain restrictive rules, once a prospective participant is accepted, the decision to enter the program is entirely left to that person's discretion. Moreover, once an individual is inducted into the program, they are free to leave at any time.

The plaintiffs acknowledge their freedom to leave the program, but they contend that this freedom is illusory due to the possible danger posed by the subjects of the investigation in which Ms. Hertzke participated. In paragraph 20 of the Complaint, plaintiffs characterize their options as "Draconian"—"live free and die at the hands of criminals, or live as prisoners of the Federal Witness Protection Program"—and contend that, by placing them in that situation, defendants violated their due process liberty interest. The Supreme Court recently rejected a similar analysis of the Due Process liberty interest in *DeShaney v. Winnebago County Dep't of Social Services*, —— U.S. ——, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

The *DeShaney* case arose when a four-year-old boy suffered brain damage after being beaten by his father. The mother, who did not have custody of the child, brought suit against the Winnebago County Department of Social Services under 42 U.S.C. § 1983 for depriving the boy of his liberty "by failing to intervene to protect him against a risk of violence at his father's hands of which they knew or should have known." *Id.*, 109 S.Ct. at 1002.

The Supreme Court, in an opinion by Chief Justice Rehnquist, held that a government's failure to protect an individual against private violence does not constitute a due process violation. *Id.*, 109 S.Ct. at 1004. The Constitution imposes an affirmative duty upon government to care for the safety and general well-being of an individual only when that government takes the individual into custody and holds him/her there against his/her will. *Id.*, 109 S.Ct. at 1005. The critical analysis centers on whether the government's actions constitute taking "custody" of the individual against his/her will, not whether the government has contributed to the danger the individual faces from a private individual.

Due process liberty interests are raised when an individual has been involuntarily committed, *see Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), or when an individual has been incarcerated, *see Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). So long as an individual is free to leave the care and control of the government, the government does not have a constitutional obligation to provide for that individual's safety and general well-being.[1] The Supreme Court has stated the rationale for this principle as follows:

> [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it trans-

---

1. The government may have a constitutional obligation to provide for the safety and well-being of a voluntarily confined individual who is incapable of giving informed consent. *See Clark v. Cohen*, 794 F.2d 79, 92 n. 7 (3d Cir.) (Becker, J., concurring), *cert. denied*, 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 404 (1986); *Woods v. Ronald Bruce Nipon Ass'n, Inc.*, No.

86–4548, 1987 WL 7222 (E.D.Pa. Feb. 25, 1987).

Plaintiffs Sharon and George Hertzke do not allege that they are incapable of making an informed decision regarding their continued participation in the program. Although plaintiff Shawn Hertzke may not be able to give informed consent because he is a minor, his

gresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*DeShaney*, 109 S.Ct. at 1005–06 (citations omitted).

By participating in the FWPP, the plaintiffs are not in the custody of the Federal Government against their will. To the contrary, plaintiffs are free to leave the control of the Federal Government at any time. Moreover, the fact that some of the defendants allegedly were aware of the danger confronting plaintiffs and broke a promise to protect them does not establish a special relationship giving rise to a constitutional duty to protect them. Accordingly, I find that plaintiffs' due process liberty rights have not been violated.

Although the plaintiffs fail to allege any constitutional deprivations, they may be able to state a cause of action under state law in tort or for breach of contract. What the Court is saying today is that any such torts or breaches of contract by government actors are not constitutional violations. *See DeShaney*, 109 S.Ct. at 1007; *Daniels v. Williams*, 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986).

Because plaintiffs have failed to allege a constitutional violation, I find the Complaint fails to state a claim upon which relief can be granted under 42 U.S.C. §§ 1983 and 1985(3) and *Bivens*. Accordingly, I do not reach the issues of the statute of limitations and qualified immunity.

An appropriate Order follows.

## ORDER

AND NOW, to wit, this 8th day of May, 1989, upon consideration of the Motion of the defendants, John Riley, John Doherty, Donn Jerre Miller, Robert Lumsden, John

Morgan and the United States Drug Enforcement Administration, to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6), such Motion being considered as a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56, and the Motion of the defendant, Ralph Marinetti, for Summary Judgment pursuant to Fed.R.Civ.P. 56, and the response of the plaintiffs, George Hertzke, Sharon Hertzke and Shawn Hertzke, IT IS ORDERED that the Motions of the defendants are GRANTED and judgment is entered in favor of the defendants, John Riley, John Doherty, Donn Jerre Miller, Robert Lumsden, John Morgan, the United States Drug Enforcement Administration and Ralph Marinetti, and against the plaintiffs, George Hertzke, Sharon Hertzke and Shawn Hertzke.

---

participation in the FWPP is compelled solely by his parents and not by any governmental actor or entity; therefore, his inability to give informed consent does not invoke any Due Pro-

cess liberty interest unless his participation in the FWPP is against the will of his parents. *See Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (Stewart, J., concurring).