168 F.Supp.2d 332 (2001)
Amanda WALKER-SERRANO, by her parents, Lisa WALKER and Michael Serrano Plaintiff,
v.
Donald LEONARD, Individually and in his official capacity as President of the Lackawanna Trail School Board, Dr. Clyde Ellsworth, Individually, and in his official capacity as Superintendent of the Lackawanna Trail School District, Nancy Simon, Individually and in her official capacity as Principal of the Lackawanna Trail Elementary School, Pat Carpenter, Individually and in her official capacity as a teacher at the Lackawanna Trail Elementary School, Defendants.
No. 3:99-CV-0716.
United States District Court, M.D. Pennsylvania.
October 9, 2001.
*333 *334 Gordon A. Einhorn, Schnader, Harrison, Segal & Lewis, Harrisburg, PA, for Plaintiff.
Melinda B. Kaufmann, Stock and Leader, PC, Stephen S. Russell, Stock & Leader, York, PA, for Defendants.

*335 MEMORANDUM

CAPUTO, District Judge.
Plaintiff, Amanda Walker-Serrano, filed this civil rights action on May 4, 1999 against Donald Leonard, Dr. Clyde Ellsworth, Nancy Simon, and Pat Carpenter, individually and in their official capacities at Lackawanna Trail Schools, pursuant to 42 U.S.C. § 1983, alleging violation of her First Amendment rights, emotional distress, and various state law claims. (Doc. 1.) Defendants filed a motion for summary judgment on May 30, 2000. (Doc. 13.) Magistrate Judge Thomas M. Blewitt has recommended that the Court grant Defendants qualified immunity in their individual capacities, grant Defendants' motion for summary judgment with respect to all Plaintiff's federal claims, and that the state claims be dismissed without prejudice. (Report and Recommendation, Doc. 24.) Plaintiff filed a timely objection to the Magistrate Judge's report and recommendation. (Doc. 27.) After making a de novo determination of the case, I adopt that recommendation. Defendants are entitled to qualified immunity on all claims, as Plaintiff's First Amendment rights were not clearly established. Defendants' conduct did not violate any of Plaintiff's First Amendment rights. I further find that the School District cannot be held liable under Monell liability for First Amendment violation. Accordingly, as Plaintiff's federal law claims are dismissed, I agree with the Magistrate Judge that Plaintiff's state law claims are dismissed without prejudice.

BACKGROUND
At the time of the relevant facts, Plaintiff was a third-grade student at Lackawanna Trail Elementary School ("the School"), which is part of the Lackawanna Trial School District ("the School District"). (Doc. 1, ¶ 3.) Plaintiff's third-grade class planned to take a field trip to Shriner Circus on April 7, 1999. (Doc. 1, ¶ 10.)
Plaintiff, unhappy with the scheduled field trip, prepared a handwritten petition stating, "[w]e 3rd grade kids don't want to go to the circus because they hurt animals. We want a better feild [sic] trip." (Doc. 16, Exhibit 2.)
The parties dispute whether plaintiff asked permission to circulate the petition as required under school policy (Doc. 15, ¶ 16) or whether Plaintiff was told that she was prohibited from circulating the petition. (Doc. 18, ¶ 16.) Either way, Plaintiff brought her petition to school and circulated it during recess among her classmates, discussing how circuses are cruel to animals and obtaining 30 signatures on the petition on February 4, 1999. (Doc. 1, ¶ 13.) On February 5, 1999, Plaintiff again circulated her petition at recess and obtained three additional signatures. (Doc. 1, ¶ 16.) The parties dispute the events that occurred during the recess period on February 5. Defendants contend that Defendant Pat Carpenter ("Carpenter"), a teacher at the School, noticed a large group of students around Plaintiff near an icy patch on the playground and proceeded to investigate. On the way, Carpenter sent a crying child, who had fallen on the ice, to the nurse. (Doc. 16, Exhibit 17.) Carpenter told Plaintiff "you can't have that here." Defendants claim that Carpenter was speaking generally of the paper and writing utensils, out of fear that someone would get hurt on the icy playground. (Doc. 16, Exhibit 17.) Plaintiff denies there was any ice near her, that Carpenter was referring to circulating the petition, and that she was prohibited from having a petition at school. (Doc. 16, Exhibit 17.) Plaintiff spent part of the day in the nurse's office in tears and alleges that Carpenter's remarks caused extreme emotional distress. (Doc. 16, Exhibit 11.)
*336 Another incident occurred during one of Plaintiff's classes. The details are again in dispute. Both sides agree that Mrs. Mercanti, Plaintiff's teacher, told her to put away a folder which contained the petition and other non-related material. Plaintiff alleges the incident occurred during study period, when one student stood by her desk and asked for her phone number. Defendants maintain that it occurred in reading class, when a group of students were around Plaintiff talking about the petition when they should have been reading quietly among themselves.
Plaintiff alleges that Defendant Nancy Simon ("Simon"), principal of the school, became aware of the petition on February 4, 1999. (Doc. 1, ¶ 14.) She instructed the teachers that if Plaintiff was observed circulating the petition, she should be told that she was prohibited from doing so on school property. Id. Principal Simon is further alleged to have instructed the teachers that students are prohibited from taking pencils onto the school playground, in order to prevent Plaintiff from obtaining signatures on her petition. (Doc. 1, ¶ 15.)
When Plaintiff returned home and told her mother what occurred at school, her mother called Principal Simon, who allegedly stated that Plaintiff could not circulate the petition at school. (Doc. 1, ¶ 19.) Plaintiff's mother denies she was informed of a school district policy that any materials a student wished to distribute must be submitted for prior review to a school district representative. Id. Unsatisfied with the response, Plaintiff's mother called Defendant Ronald Leonard ("Leonard"), the President of the School Board, about the incident. Plaintiff's parents then retained counsel, who wrote to the School District about the incident. The District's solicitor responded to Plaintiff's counsel. (Doc. 1, ¶ 19.) The letter, dated February 19, 1999, stated in relevant part:
In regard to stopping the circulation of a petition among third-graders on school property during the school day, there appears to be an erroneous assumption about the basis and motives for that action. Your letter presents interesting extracts from Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), however, this is not a case in which school authorities took punitive action "to avoid the discomfort and unpleasantness" of differing views on visiting a circus. On the contrary, Ms. Walker-Serrano has expressed and continues to express her personal views on the circus trip. The school has no authority and no desire to curtail her free expression of such views. However, Ms. Walker-Serrano was denied the opportunity to circulate a petition on elementary school property during the school day for signature of other third grade students. Ms. Walker-Serrano activities briefly disrupted classroom instruction and may have contributed to a situation where another child fell down during recess and was subsequently examined by the school nurse. According to information we have at this point, the petition was never taken away from Ms. Walker-Serrano. She was told to put it away. Elementary schools are not generally the environment for petition circulation, particularly where parents are totally unaware of such activities. It is incumbent upon school authorities, particularly in an elementary school setting, to preserve an appropriate environment focused on the institution's instructional objectives.
(Doc. 1, Exhibit 2; Doc. 20, Exhibit B-2.) Then, in a letter dated February 25, 1999, the District's solicitor advised Plaintiff that she had been prohibited from circulating her petition because she had failed to comply *337 with the District's policy on student expression (Policy 220). (Doc. 1, ¶ 20.) The District passed a regulation, pursuant to a Pennsylvania statute that provides "school officials may require students to submit for prior approval a copy of materials to be displayed, posted, or distributed in school property." 22 Pa.Code. § 12.9(e). Pursuant to this statute, the District promulgated Policy 220. (Doc. 15, ¶ 2.) It stated, in relevant part: "The Board shall require that students who wish to distribute materials submit them for prior review. Where the reviewer cannot show within two school days that the materials are unprotected, such materials may be distributed...The Superintendent shall develop rules and regulations for the distribution of printed material which shall include: procedure for the prior review of all materials to be distributed." (Doc. 1, Exhibit 3; Doc. 16, Exhibit 1.)
Plaintiff's counsel responded that when Plaintiff's mother brought her concerns about the planned circus field trip and petition incident to the School Board on February 22, 1999, such action constituted such a request and that, not having heard anything within two days, Plaintiff was then free to circulate her petition. (Doc. 1, ¶ 22.) Defendants' solicitor responded that the presentation at the Board meeting did not constitute "presentation" to the reviewer and that the proper procedure would be for Plaintiff to present the petition to Principal Simon for approval. Id. Plaintiff does not allege that this procedure was ever taken up with Principal Simon. Plaintiff asserts, rather, that the Solicitor only raised this policy long after Plaintiff was made to stop circulating her petition at school and that the policy was not enforced by the District.
The third-grade class attended the circus on April 7, 1999. Plaintiff did not attend and stood outside the circus with her mother to protest animal abuse. (Doc. 16, Exhibit 12.) These events received media attention; Plaintiff was on the local television news and in the local newspapers. (Doc. 16, Exhibit 11.) She was teased by her schoolmates, and older schoolboys on the bus said things like "kill the animals" and "torture the animals." Plaintiff claims that these events caused her severe emotional distress for which she sought professional help. (Doc. 16, Exhibits 11, 12.)

STANDARD OF REVIEW
Federal Rule of Civil Procedure 56 provides that the moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A disputed fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.
Where, however, there is a disputed issue of material fact, summary judgment will lie only if the factual dispute is not a genuine one. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party under the governing evidentiary standard. Id. at 248-53, 106 S.Ct. at 2510-12. The moving party has the initial burden of identifying the absence of genuine issues of material fact and establishing its entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 329, 106 S.Ct. 2548, 2554, 91 L.Ed.2d *338 265 (1986). The moving party may present its own evidence or simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323, 106 S.Ct. 2548. Once the moving party has satisfied its initial burden, the nonmoving party must either present affirmative evidence supporting its version of the material fact or refute the moving party's contention that the fact entitles it to judgment as a matter of law. See Anderson, 477 U.S. at 256-57, 106 S.Ct. at 2514. The opposing party must "go beyond the pleadings" and set forth specific facts to show that a genuine issue exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This burden may not be met with conclusory statements of speculations, but only with appropriate citations to relevant admissible evidence. "[C]onclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972).
A court considering a summary judgment motion need not accept conclusory allegations or denials taken from the pleadings, Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) credit the evidence of the non-movant and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513. In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id., 477 U.S. at 249, 106 S.Ct. at 2511. Summary judgment is mandatory when, after adequate time for discovery, a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Hertzke v. Riley, 715 F.Supp. 117, 119 (1989). Under this standard, Magistrate Judge Blewitt has recommended that the court grant Defendants' motion for summary judgment with respect to all Plaintiff's federal claims, and that the state claims be dismissed without prejudice. (Report and Recommendation, Doc. 24.)
Plaintiff has filed objections to the Magistrate Judge's report and recommendation, (Doc. 27), arguing that the Magistrate Judge failed to properly apply the standard enunciated in Tinker v. Des Moines Independent Community School District by dismissing her First Amendment claims, and that he misapplied the facts when considering Defendant Leonard and qualified immunity for all Defendants.
Where a Magistrate Judge makes a finding or ruling on a motion or issue, his determination should generally become that of the court unless a specific objection is filed within the prescribed time. See Thomas v. Arn, 474 U.S. 140, 150-53, 106 S.Ct. 466, 472-74, 88 L.Ed.2d 435 (1985). Where, however, as here, objections are filed to the Magistrate Judge's report and recommendation, the district court is required to give plenary consideration to the matter and make a de novo determination of the contested issues, see Sample v. Diecks, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989); (28 U.S.C. § 636(b)(1)(C)); Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir.1987); Owens v. Beard, 829 F.Supp. 736, 738 (M.D.Pa.1993), provided the objections are both timely and specific, see Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir.1984). Although the review is de novo, the statute permits the district court to rely on the recommendations of the Magistrate Judge to the extent it deems proper. United States v. Raddatz, 447 U.S. 667, *339 676, 100 S.Ct. 2406, 2413, 65 L.Ed.2d 424 (1980); Goney v. Clark, 749 F.2d 5, 7 (3d Cir.1984); Ball v. United States Parole Commission, 849 F.Supp. 328, 330 (M.D.Pa.1994). The district court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the Magistrate Judge. 28 U.S.C. § 636(b)(1); Owens, 829 F.Supp. at 738.
As the Court's review of the Magistrate Judge's report is de novo, the court will review the Magistrate Judge's findings and conclusions under the substantial evidence standard. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.2001). Substantial evidence is more than a mere scintilla but less than a preponderance, and has been defined as such evidence that a reasonable person would accept as adequate to support a conclusion. Id.; Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir.1986). Further, as the Third Circuit has explained:
Our decisions make clear that determination vel non of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [agency] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence  particularly certain types of evidence (e.g., that offered by treating physicians).
Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir.1983) (citations omitted). So far as the Magistrate Judge's findings are supported by substantial evidence, those findings are binding on this court. Fargnoli, 247 F.3d at 38.

DISCUSSION
Plaintiff alleges a violation of 42 U.S.C. § 1983, her First and Fourteenth Amendment rights and Article 1, §§ 7 and 20 of the Pennsylvania Constitution. In preventing Plaintiff from circulating her petition, Defendants violated Plaintiff's right to free speech and due process (Count I); Plaintiff's right to petition for redress of grievances (Count II); Plaintiff's right to freedom of association (Count III); and intentional infliction of emotional distress (Count IV).
For the reasons set forth below, Defendants' motion for summary judgment is granted. Plaintiff's federal law claims are dismissed, and her state law claims are dismissed without prejudice due of lack of subject matter jurisdiction.

A. Federal Law Claims

1. Defendant Leonard's Lack of Personal Involvement Claim

Plaintiff alleges that Leonard, President of Lackawanna Trail School Board, bears policy-making and policy-implementing responsibilities for Lackawanna Trail School District. (Doc. 1, ¶ 6.) Defendants admits that Leonard is the President of the School Board, but denies that he bears policy-making and policy-implementing responsibilities. Defendants further denied that any individual member of a school board in Pennsylvania has individual policy-making authority. (Doc. 4, ¶ 6.)
Magistrate Judge Blewitt determined that Leonard did not participate in the events at issue, the School District's Policy # 220 was not being constitutionally challenged, and the School Board was not being sued. He recommended that summary judgment be granted in Leonard's favor.
"A defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in or approved...A school board can be held responsible for a constitutional violation only if the violation occurred as a result of the policy, custom, or practice established by the board." C.H. ex. rel. Z.H. v. Oliva, 226 F.3d 198, 201-02 (3d Cir.2000). It is clear that if a *340 constitutional violation exists, it was not the result of Policy # 220. Plaintiff admittedly never followed Policy # 220; she was "so upset, she took no further steps to seek prior approval of the petition from the school district." (Doc. 28.) Plaintiff does not allege that Leonard participated in the incident with the petition, and, more importantly, Plaintiff did not produce sufficient evidence to prove Leonard approved of the alleged deprivation. Policy # 220, the School Board's policy, was not utilized with respect to Plaintiff. Similar to the argument in Oliva, Plaintiff argues that Leonard failed to exercise his supervisory powers to protect the First Amendment rights of Plaintiff. See Oliva, 226 F.3d at 202. There, the court found that a state official could be held liable under § 1983 for failing to exercise supervisory authority "only if that official `has exhibited deliberate indifference to the plight of the person deprived'" Oliva, 226 F.3d at 202, (quoting Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989)). Thus, Plaintiff must show that Leonard had contemporaneous knowledge of the petition incident (proven by Plaintiff's mother's phone call to Leonard) and circumstances under which Leonard's inaction could be found to communicate a message of approval. Oliva, 226 F.3d at 202, (citing Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997)). The letter from the solicitor dated February 19 is insufficient to communicate approval of the action. "This is a situation in which...[Leonard] did not play any role in the challenged decisions, and there is no allegation...to the contrary." Oliva, 226 F.3d at 202. Plaintiff does not argue that she was not prohibited from petitioning because of Policy # 220.
Defendants argue that the policy came up twenty days after the events in question, therefore, Plaintiff never relied on the policy or attempted to utilize the policy. Plaintiff argues that the incidents did not end by February 25, when Plaintiff received the letter. Furthermore, Plaintiff argues that Plaintiff's mother attempted to utilize the policy at the School Board meeting on February 22. That argument is flawed for two reasons: first, Plaintiff admits that her mother did not "present" the petition for review, but merely had copies of the petition available; second, Plaintiff was not aware of the policy on February 22. She did not become aware of the policy until February 25. It is impossible for Plaintiff to officially present something for review if she did not know she was required to do so. Plaintiff's conduct did not constitute a request for a review. Since Defendants never followed Policy # 220, it was not the cause of any alleged Constitutional deprivation. Accordingly, I will adopt the Magistrate Judge's ruling that Leonard must be dismissed as a Defendant due to his lack of personal involvement.

2. Defendants Qualified Immunity Claim

Defendants raise the defense of qualified immunity as to the claims against them in their individual capacity. Magistrate Judge Blewitt recommended summary judgement be granted for Defendants on the ground of qualified immunity. I will adopt that recommendation.
It is a well-established legal principle that government officials may enjoy qualified immunity from suit. Public officials have qualified immunity under § 1983 when conducting discretionary functions if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Officials are not entitled to qualified immunity "if he knew or reasonably *341 should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). The right must be clearly established, and it must be objectively reasonable for Defendants to believe that their actions did not violate those rights. See P.C. v. McLaughlin, 913 F.2d 1033, 1040 (2d Cir.1990). "The court should ask whether the [officials] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed...after the fact." Hunter v. Bryant, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).
To determine whether a constitutional right is "clearly established," the right must be sufficiently clear so that a reasonable person would understand that his conduct violates that right. See Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The right is not as broad as First Amendment rights of public school students, as Plaintiff suggests, nor as narrow as the unfettered constitutional right of an elementary school student to circulate a petition when and where the student chooses, as Defendants suggest. Rather, the issue is whether elementary school students have the same First Amendment rights as high school students.
Where a statute or ordinance authorizes particular conduct, courts have held that the statute is a factor which weighs in favor of the conclusion that a reasonable official would find the conduct constitutional. See Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir.1994)(citing Evers v. County of Custer, 745 F.2d 1196, 1203 (9th Cir.1984)); Malachowski v. City of Keene, 787 F.2d 704, 713-14 (1st Cir.1986), cert. denied, 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986); see also Anderson, 483 U.S. at 640, 107 S.Ct. 3034 (holding that in order for a claim of qualified immunity to fail, it must be apparent that the actions taken are unlawful in light of pre-existing law). However, "[w]here a statute authorizes official conduct which is patently violative of fundamental constitutional principles, [a public official] who enforces that statute is not entitled to qualified immunity" Grossman, 33 F.3d at 1209, even if the action has not yet been held unlawful by the courts. Anderson, 483 U.S. at 640, 107 S.Ct. at 3039.
Plaintiff alleges that she was told she could not circulate a petition, not that she needed prior approval, and that this blanket prohibition violated her First Amendment rights. Plaintiff has the burden of showing that she has a clearly established First Amendment free speech right in an elementary school setting. Plaintiff argues that there is a clearly established right to distribute printed materials, and the fact this conduct took place in an elementary school rather than in a high school is irrelevant in determining that the right was clearly established. However, the age of Plaintiff and her audience cannot be ignored: All of the cases Plaintiff cites deal with high school students. Plaintiff states:
In holding that these factors are relevant because this case involved an elementary school, the Report has created an entirely new standard for First Amendment cases involving elementary school students which radically departs from the Supreme Court's Tinker standard. The Report cites no authority for this separate elementary school standard, and, in fact, none exists. *342 (Doc. 28, pg. 12.) This is not true. Many cases have made a clear distinction between high school and elementary school students. See Baxter v. Vigo County School Corp., 26 F.3d 728, 736 (7th Cir. 1994); Harless v. Darr, 937 F.Supp. 1339, 1350 (S.D.In.1996); Muller v. Jefferson Lighthouse School, 98 F.3d 1530, 1538 (7th Cir.1996);("the Supreme Court has not expressly considered whether the free expression rights first announced in Tinker extend to grade school children...The Court has not suggested that fourth graders have the free expression rights of high school students."). But see Johnston-Loehner v. O'Brien, 859 F.Supp. 575 (M.D.Fl.1994)(applying the Tinker and high school-age students standard to an elementary school student passing out religious material).
Plaintiff must offer either a closely analogous case or evidence that Defendants' conduct is "patently violative" of her First Amendment right so "reasonable officials would know without guidance from the courts." See Baxter, 26 F.3d at 737. Regardless of whether Plaintiff has a constitutional right to petition, it is not clearly established, especially in light of the conflicting case law and the Pennsylvania statute. See 22 Pa.Code. § 12.9. Due to the absence of any authority or case law discussing the First Amendment rights of elementary school students, I am unable to conclude that Plaintiff has demonstrated that, even if Defendants violated Plaintiff's First Amendment rights, that right was "clearly established." Therefore, I will adopt the Magistrate Judge's recommendation in granting summary judgement against Defendants in their individual capacity on the ground of qualified immunity.

3. First Amendment Claims against The School District

While Defendants are entitled to qualified immunity in their individual capacity, the School District may still be liable for the actions of the Defendants. Plaintiff alleges that preventing her from circulating her petition violated her First Amendment right to free speech and due process; her right to petition for redress of grievances; her right to freedom of association; and intentional infliction of emotional distress.

i. Free Speech Claim
The First Amendment of the United States Constitution provides, in relevant part, that "Congress shall make no law...abridging the freedom of speech." U.S. CONST. amend. I. That amendment applies to the states by virtue of the Fourteenth Amendment. Plaintiff argues that she was prohibited from petitioning at school by her principal and teacher, a violation of her First Amendment free speech rights. Defendant, meanwhile, argues that Plaintiff merely needed prior approval, a permissible time, place, and manner restriction. It is undeniable that Plaintiff was told as of February 25, 1999 that she had to receive prior approval for the petition. The relevant inquiry, then, is what she was told, or what policy was enforced, between February 5 and that date.
There are not any cases directly dealing with an elementary school student's constitutional right to petition at school. The Supreme Court has decided a trilogy cases that establish the framework within which to evaluate the First Amendment claims of public school students. That trilogy is Tinker-Fraser-Hazelwood. The common theme among the three is that First Amendment rights of expression must comport with the ability of school officials to carry out the educational mission. The First Amendment must be applied in light of the special circumstances *343 of the school environment, balancing the individual students' rights with the rights of the school to maintain order. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969).
In Tinker, junior high and high school students, aged 13-16, wore black armbands to school in silent protest of the Vietnam War. The armbands violated school policy, and the students were suspended. The Supreme Court addressed the tension between school authority and student autonomy, and noted that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker, 393 U.S. at 506, 89 S.Ct. at 736. However, school officials must be able to maintain order in the schools. Id. at 507, 89 S.Ct. at 736. "In order for ...school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." Id. at 509, 89 S.Ct. at 738. A school cannot prohibit speech simply because of disagreement with the content of the speech or to avoid controversy. "[A student] may express his opinions. ..if he does so without materially and substantially interfer[ing] with the requirements of appropriate discipline in the operation of the school and without colliding with the rights of others." Id. at 513, 89 S.Ct. at 740. The school did not allege and could not show any disruption from the silent protest, thus the students' First Amendment rights triumphed. Id. at 514, 89 S.Ct. at 740.
Next, in Fraser, a public high school student was suspended for delivering a speech full using "explicit and sexual metaphors" and innuendos when nominating a fellow student for student elective office at an assembly. Bethel School District No. 403 v. Fraser, 478 U.S. 675, 675, 106 S.Ct. 3159, 3160, 92 L.Ed.2d 549 (1986). Distinguishing the case from Tinker, the Supreme Court held that the First Amendment allowed the school to discipline Fraser's lewd and indecent speech, despite the fact that one could not punish an adult for similar behavior. Id. at 676, 106 S.Ct. at 3161. Fraser's speech was clearly different from the silent protest of armbands that did not disrupt school. Students were embarrassed and disruptive, and classes were disrupted. The Court noted that "the constitutional rights of students in public schools are not automatically coextensive with the rights of adults in other settings" due to the school's interest in protecting minors. Id. at 682, 685, 106 S.Ct. at 3164, 3165. Thus, the school could punish Fraser for the disruptive speech.
Finally, in Hazelwood, a principal deleted two articles from the high school newspaper students dealing with controversial issues (pregnancy and divorce) because he felt their content was inappropriate. Hazelwood, 484 U.S. at 260, 108 S.Ct. at 564. The Supreme Court held this action did not violate the students First Amendment rights because "school[s] need not tolerate student speech that is inconsistent with its basic educational mission." Id. at 266, 108 S.Ct. at 567. Schools do not need to lend their name and resources to the dissemination of student expression. Id. at 272, 108 S.Ct. at 571.
These three cases are analyzed in every First Amendment school setting case, however, courts are split as to how to interpret their interplay. The Third Circuit stated in Saxe v. State College Area School District:
Under Fraser, a school may categorically prohibit lewd, vulgar, or profane language. Under Hazelwood, a school may *344 regulate school-sponsored speech...on the basis of any legitimate pedagogical concern. Speech falling outside of these categories is subject to Tinker's general rule: it may be regulated only if it would substantially disrupt school operations or interfere with the right of others.
Saxe v. State College Area School District, 240 F.3d 200, 214 (3d Cir.2001). Even under Tinker's rule, however, Plaintiff's claims falls. The differences far outweigh the similarities. For school officials to justify prohibition of a particular expression of opinion, they "must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." 393 U.S. at 509, 89 S.Ct. at 738. In Tinker, since the record failed to "demonstrate any facts which might reasonably have led school authorities to forecast substantial disruption...and no disturbances or disorders on the school premises in fact occurred," id. at 503, 89 S.Ct. at 740, the Court held that the school regulation was unconstitutional.
The present case is unlike Tinker; this is not a "silent, passive expression of opinion, unaccompanied by any disorder or disturbance." Tinker, 393 U.S. at 508, 89 S.Ct. at 737. Defendants have presented evidence that an actual classroom disruption occurred. During reading class time, student(s) gathered around Plaintiff's desk talking, when they should have been in their seats independently working. (Doc. 16, Exhibit 18.) It is irrelevant how many people were at Plaintiff's desk. Even if there was only one student standing by her desk at that time, as Plaintiff alleges, it still disrupted other students from completing their work. Knowing the previous episode with the petition, and seeing the petition on the desk, it is reasonable that Mrs. Mercanti  who is not named as a defendant  would conclude that the petition was the result of the commotion. Moreover, she could reasonably believe that the situation could escalate further. Finally, "the First Amendment does not require school officials to wait until disruption actually occurs before they may act to curtail exercise of the right of free speech but that they have a duty to prevent the occurrence of disturbances." Jeglin II v. San Jacinto Unified School District, 827 F.Supp. 1459 (C.D.Ca.1993).
Unlike Tinker, Fraser, and Hazelwood, Plaintiff was not completely silenced on the issue. She was never disciplined. She was not punished or told she was in trouble. She was not prevented from expressing her views against the circus. She was, at most, prohibited from petitioning on school grounds, and perhaps only required to go through the same prerequisites that other students who wished to petition were required to do. She was permitted to pass out stickers and coloring books to the third-grade class protesting the circus, following the guidelines set in Policy # 220. This is not a case of the prohibition of a particular expression. Compare Tinker, 393 U.S. at 511, 89 S.Ct. at 739.
Plaintiff argues that the fact that the students here are elementary school students rather than high school students is not of any importance. (Doc. 19.) However, "[a]ge is a relevant factor is assessing the extent of a student's free speech rights in school." Baxter, 26 F.3d at 738 (emphasis in original). While a student's First Amendment rights are not postponed until high school, age is and must be a relevant consideration in student speech cases. Muller, 98 F.3d at 1538, (quoting Hedges v. Wauconda Comm. School Dist. No. 118, 9 F.3d 1295, 1298 (7th Cir.1993)). One must consider that Plaintiff and her audience were only elementary school students, *345 and even less mature than high school students. See Fraser, 478 U.S. at 683-85, 106 S.Ct. at 3164-65. Public elementary school students do not necessarily have the same First Amendment rights as high school students. See Muller v. Jefferson Lighthouse School, 98 F.3d 1530 (7th Cir.1996), cert. denied, 520 U.S. 1156, 117 S.Ct. 1335, 137 L.Ed.2d 495 (1997)("the marketplace of ideas, an important theme in the high school expression cases, is less appropriate description of an elementary school, where children are just beginning to acquire the means of expression.")
Admittedly, "adolescents gradually become able to make intelligent and mature decisions for themselves and...they do so at varying ages." In re Appeal in Maricopa, 181 Ariz. at 74, 887 P.2d at 604. Minors are protected by the Constitution, id., (citing Planned Parenthood v. Danforth, 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976)), however, those rights are not "automatically coextensive with the rights of adults." Fraser, 478 U.S. at 682, 106 S.Ct. at 3164. "The power of the state to control the conduct of children reaches beyond the scope of its authority over adults." In re Appeal in Maricopa, 181 Ariz. at 75, 887 P.2d at 605, citing Prince v. Massachusetts, 321 U.S. 158, 170, 64 S.Ct. 438, 444, 88 L.Ed. 645 (1944). Moreover, if the Supreme Court noted that a high school students may not yet "possess. ..that full capacity for individual choice which is the presupposition of First Amendment guarantees," Tinker, 393 U.S. at 515, 89 S.Ct. at 741, how can one state that elementary school students possesses the capacity without limitation?
The Supreme Court's standard for fundamental rights in the context of children is: "government restrictions that inhibit the fundamental rights of minors are valid only if the restrictions serve a `significant state interest...that is not present in the rights of an adult.'" In re Appeal in Maricopa, 181 Ariz. at 76, 887 P.2d at 605, citing Planned Parenthood v. Danforth, 428 U.S. at 75, 96 S.Ct. at 2844. Factors to consider include the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner and the importance of the parental role in child rearing. In re Appeal in Maricopa, 181 Ariz. at 76, 887 P.2d at 606. See also Fraser, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (the Court focused primarily on the sexual nature of the speech, but also considered the age of the speaker); Hazelwood, 484 U.S. at 272, 108 S.Ct. at 570 ("a school must be able to take into account the emotional maturity of the intended audience.").
The Court in Hazelwood went through an analysis of public and private forums, which is largely irrelevant here. As the school facilities have not been opened for indiscriminate use by the public, this is a nonpublic forum, and thus the school has more control over the speech than if it was a public forum. A school can enforce content-neutral time, place, and manner regulations if they are reasonable, meaning narrowly tailored to serve a significant government interest which leave open ample alternative channels of communication. See Heffron v. International Soc. For Krishna Consciousness, Inc., 452 U.S. 640, 647-48, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981). Preventing the disruption of education at public schools is a significant government interest. Id.
This is a content-neutral restriction. Plaintiff was able to speak against the field trip to the circus. She was able to pass out stickers and coloring books protesting the field trip. When Carpenter encountered another child who had fallen on the ice during recess on February 5, whether or not Plaintiff in any way caused the child to fall on the ice is irrelevant. *346 The incident shows the dangers that can befall the students on the playground. It is reasonable for safety reasons to prohibit students from bringing pens, pencils, or other potentially dangerous items with them on the playground, regardless of whether there was ice directly around Plaintiff. Defendants have a compelling interest in protecting the safely of the children. While Plaintiff claims that another petition in support of the circus was permitted without review, she presented no evidence that school officials were aware of the existence of another petition.
Even beyond the ability of the school to control Plaintiff's speech, a municipality cannot be held liable under 42 U.S.C. § 1983 under a theory of respondent superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order for the School District to be held liable under § 1983, the school administrators must have been acting pursuant to the custom or practice in violation of Plaintiff's First Amendment rights; Plaintiff must demonstrate that a custom or practice of banning petitions at elementary schools within the school district was so well-settled and pervasive that it assumed the force of law; normally, random acts or isolated incidents are insufficient to establish a custom. U.S.C.A. Const. Amend. 1; 42 U.S.C.A. § 1983; Monell, 436 U.S. at 658, 98 S.Ct. at 2018.
"The government entity is liable under § 1983 only when the entity is a `moving force' behind the deprivation." Graham, 473 U.S. at 166, 105 S.Ct. at 3106, (quoting Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)). Accordingly, in an official-capacity suit, the entity's custom or policy must have played a part in the violation of federal law. Id. It is clear that the School District's Policy # 220 did not play a part in the violation of federal law. Therefore, there was not a policy or custom to hold the municipality liable.
Municipality liability can be imposed based on an isolated decision by a municipal employee or official only if that official has "final policymaking authority for the challenged act under state law." City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Such final authority exists over a particular employee only if that official's decisions are not subject to meaningful administrative review. See Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir.1997). While Plaintiff argues that Principal Simon has policy-making authority, Plaintiff does not argue that Principal Simon has final policy-making authority. Clearly, her decisions can be reviewed by Superintendent Ellsworth, the Superintendent by the School Board. Therefore, the school district cannot beheld liable for the acts of its employees.

ii. Right to Petition for Redress Claim
Plaintiff alleges that her attempt to gather signatures on her petition was protected by the First Amendment, and Defendants' order to put her petition away violated her First Amendment right to petition for redress of grievances. Juveniles enjoy the right to petition the government for redress of grievances under the First Amendment as well as adults. In re Appeal in Maricopa County, 181 Ariz. at 75, 887 P.2d at 605.
Plaintiff relies on Wolfel v. Bates to support the proposition that the First Amendment right to petition government for redress of grievances includes the right to hand out a petition to be signed. Wolfel v. Bates, 707 F.2d 932 (1983). See also Florida Committee For Liability Reform v. McMillan, 682 F.Supp. 1536 (1988). Thus, Plaintiff's act of gathering signatures and seeking the support of others *347 should be protected by the right to petition.
In Wolfel, a prison inmate drafted a petition alleging misconduct by the prison guards. After presenting the petition to the prison superintendent, Wolfel was punished for violating a prison rule against "making unfounded complaints or charges against staff members with malicious intent." Wolfel, 707 F.2d at 933.
The distinction between Wolfel and the present case is simple: "Wolfel was, in effect, subject to discipline merely because he complained;" Plaintiff was not disciplined or punished in any manner. Id. at 934. Furthermore, the court noted the "limited application" of its decision, it is clear the court noted this right was not absolute and could be restricted. Id. at 934, n. 1.
Furthermore, unlike Wolfel, this was not a blanketed restriction against petitioning against the circus trip. Plaintiff was not prohibited from all types of petitioning. She was permitted to come before the school board, she was permitted to pass our coloring books to the third grade class. The school's policy, unlike the rule in Wolfel, does not make any and all complaints wrong, just in certain situations.
The right to petition is inseparable from the right to free speech. See McDonald v. Smith, 472 U.S. 479, 485, 105 S.Ct. 2787, 2791, 86 L.Ed.2d 384 (1985). The above analysis with respect to the free speech claim applies here. Accordingly, Defendants' motion for summary judgment will be granted.

iii. Right to Freedom of Association Claim
Plaintiff alleges that Defendants, in preventing her from circulating her petition among her classmates, violated her First Amendment right to free association. Rights of association are clearly within the umbrella of First Amendment protection. See Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); Roberts v. United States Jaycees, 468 U.S. 609, 618, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984). This includes the freedom to associate for advancement of ideas, id, even for juveniles. In re Appeal in Maricopa County, 181 Ariz. at 75, 887 P.2d at 605. However, it is undeniable that the right to associate, like the right to free speech, is not absolute. See Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).
Plaintiff claims that Defendants' conduct effectively had a chilling effect on her freedom of association. See generally United States v. Comley, 890 F.2d 539, 544 (1989). However, unlike the "disclosure of members" factual background in the majority of cases, Plaintiff was not compelled to turn over the list of students who supported her position. Plaintiff has failed to produce any evidence illustrating that other students believed they would be harassed or retaliated against by supporting her position. It is difficult to see how Defendants' conduct had a chilling effect on Plaintiff's exercise of freedom to associate. Defendants did not dissuade Plaintiff from discussing her views. The freedom to associate, like the freedom of speech, may be limited in schools.
Furthermore, the right to assemble is intertwined with the right to free speech. See American Future Systems v. The Pennsylvania State University, 752 F.2d 854, 860, n. 23 (3d Cir.1984). As the Magistrate Judge noted, a speech claim does not receive additional protection under the right of `free association.' Id. Therefore, the above analysis with regard to the speech claim applies without restatement here. Accordingly, Defendants' *348 motion for summary judgment will be granted.

4. Fourteenth Amendment Emotional Distress Claim Against The School District

Plaintiff raises a claim for intentional infliction of emotional distress in Count IV. Plaintiff alleges that Principal Simon and Superintendent Ellsworth did nothing to prevent other students from harassing her since the petition incident.
However, absent either a special relationship or evidence that the state created the danger in question, a school is not required to protect its students from each other. D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364 (3rd Cir. 1992). In order to state a claims against Defendants, Plaintiff must show that Defendants "affirmatively create[d] the danger which harmed [her.]" Page v. School District of Philadelphia, 45 F.Supp.2d 457, 465 (E.D.Pa.1999).
Plaintiff alleges that Defendants, by preventing her from circulating her petition, caused the other students to tease her and allowed the teasing to continue. That does not show that Defendants affirmative caused the teasing. Plaintiff admits that her teachers never teased her. Moreover, verbal abuse, whether coming from a student or a teacher, is not a constitutional violation. Doe v. Gooden, 214 F.3d 952, 955 (8th Cir.2000). Principal Simon and Superintendent Ellsworth both met with students regarding the teasing. (Doc. 16, Exhibit 15; Doc. 16, Exhibit 16.) Furthermore, the teasing, according to Plaintiff, went on a week or two. (Doc. 16, Exhibit 11.) Plaintiff has presented no evidence that the teasing lasted for months.
For these reasons, Magistrate Judge Blewitt found that Plaintiff did not state a claim against Defendants based on emotional distress; Plaintiff does not object to the Magistrate Judge's ruling on this issue. As there is no plain error or manifest injustice, I will grant Defendant's motion for summary judgment on this issue.

B. State Law Claims
Plaintiff has alleged state law violations under the Pennsylvania Constitution and for the tort of intentional infliction of emotional distress under pendant jurisdiction. Magistrate Judge Blewitt recommended dismissing the state law claims without prejudice, based on his recommendation summary judgment be granted on all the federal claims.
Courts should ordinarily decline to exercise pendent jurisdiction over state law claims after dismissal of all federal claims prior to trial. Edelstein v. Wilentz, 812 F.2d 128, 134 (3d Cir.1987). Since allowance of pendent claims is discretionary, and all Plaintiff's federal law claims against Defendants are dismissed, I adopt Magistrate Judge Blewitt's recommendation to dismiss Plaintiff's pendent state law claims, without prejudice. (Doc. 24.)
As there is nothing in the findings of the Report and Recommendation that approaches plain error or manifest injustice, I will adopt the Magistrate Judge's Report and Recommendation under different analysis. Accordingly, Defendants' motion for summary judgment will be granted.
An appropriate order will follow.

ORDER
NOW, this 9th day of October, 2001, it is hereby ORDERED that:
1. The Report and Recommendation of Magistrate Judge Blewitt (Doc. 24) is ADOPTED;

*349 2. The Clerk of Court is directed to mark this case closed.